IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

JANICE BRADLEY                                                              PLAINTIFF

V.                                                              NO. 1:06CV237-M-B

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY                                     DEFENDANT

## MEMORANDUM OPINION

Plaintiff, Janice Bradley seeks judicial review pursuant to Section 405(g) of the Social Security Act (the "Act") of an unfavorable final decision of the Commissioner of the Social Security Administration (the "Commissioner"), regarding her application for disability benefits under Title II. The Court, having duly considered the briefs of the parties, the administrative record and the applicable law, rules as follows.

## Administrative Proceedings

Plaintiff filed an application for disability benefits under Title II on March 13, 2002, alleging a disability onset date of January 30, 2002. (Tr. 84-87). The application was denied initially and on reconsideration. (Tr. 28-44).

In a hearing decision dated September 9, 2004, an administrative law judge ("ALJ") found that Plaintiff was not disabled as defined in the Act. (Tr. 315-26). Thereafter, on March 31, 2005, the Appeals Council remanded Plaintiff's case to an ALJ for further consideration. (Tr. 337-41).

A new administrative hearing was held on November 17, 2005, after which an ALJ issued an unfavorable decision on February 24, 2006. (Tr. 15-25). The second ALJ decision became perfected as the final decision of the Commissioner when the Appeals Council denied

Plaintiff's request for review on June 23, 2006. (Tr. 9-11). The ALJ's final hearing decision is now ripe for review under section 205(g) of the Social Security Act, 42 U.S.C. §405(g).

## Facts

Plaintiff was born on October 9, 1955 (Tr. 85), and was 50 years of age at the time of the hearing decision on November 17, 2005. She completed the ninth grade and later earned a GED in 1987. (Tr. 116). Plaintiff previously worked as an dietary aide, housekeeping employee, and a packer. (Tr. 111, 118). Plaintiff alleged that she could no longer work due to back pain, neck pains and migraine headaches. (Tr. 110). Plaintiff was five-feet and three inches tall and weighed 189 pounds. (Tr. 109). However, after a careful review and evaluation of the medical evidence of record and the subjective testimony at the hearing (Tr. 447-89), as well as vocational expert testimony (Tr. 489-98), the ALJ found Plaintiff not disabled (Tr. 15-25). Contrary to Plaintiff's allegation of disability, the ALJ found that she had the residual functional capacity ("RFC") to perform a range of medium work activity, which included an ability to lift/carry up to 50 pounds occasionally and up to 25 pounds frequently, stand/walk for six hours in an eight hour workday, and sit for six hours in an eight-hour workday. (Tr. 23). The ALJ further found that Plaintiff could only occasionally climb, balance, stoop, crouch, kneel, or crawl. (Tr. 23). The ALJ also stated that Plaintiff should not work in environments of vibration. (Tr. 23). Finally, he found that Plaintiff had a poor ability to understand, remember, and carry out complex instructions, a fair ability to follow work rules, relate to coworkers, deal with the public, use judgment, interact with supervisors, deal with work stresses, function independently, maintain concentration, understand, remember and carry out detailed job instructions, and demonstrate reliability. (Tr. 23-24). The ALJ also found that Plaintiff had mild restrictions in activities of daily living, in maintaining social functioning, and in concentration, persistence, or

2

pace. (Tr. 24). He also found that Plaintiff had experienced no episodes of decompensation and had no further mental restrictions. (Tr. 24). Based upon this RFC, the ALJ found, based upon vocational expert testimony, that Plaintiff could perform her past work as a housekeeping employee, packer, and dietary aide. (Tr. 25, 491-92).

## Standard of Review

This Court reviews the Commissioner's/ALJ's decision only to determine whether it is supported by "substantial evidence" on the record as a whole and whether the proper legal standards were applied. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). Furthermore, in applying the substantial evidence standard, this Court scrutinizes the record to determine whether such evidence is present. This Court will not re-weigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Id.*, citing *Haywood v. Sullivan*, 888 F.2d 1463, 1466 (5th Cir. 1989); *see also Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001).

## Applicable Law

To be considered disabled and eligible for benefits, Plaintiff must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 to 404.1599 & Appendices, §§ 416.901 to 416.998 1995. The regulations include a five-step

3

evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity.[1] *Id.* §§ 404.1520, 416.920; *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Moore v. Sullivan*, 895 F.2d 1065, 1068 (5th Cir. 1990). The five-step inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

---

[1]The five-step analysis requires consideration of the following:

First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled. *Id.* §§ 404.1520(c), 416.920(c).

Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence. *Id.* §§ 404.1520(d), 416.920(d).

Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated. If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled. *Id.* §§ 404.1520(e), 416.920(e).

Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy. If the claimant cannot meet the demands, he or she will be found disabled. *Id.* §§ 404.1520(f)(1), 416.920(f)(1). To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns. When the findings made with respect to claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled. *Id.* § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 (1994)("Medical-Vocational Guidelines").

The claimant has the burden of proof under the first four parts of the inquiry. *Id.* If she successfully carries this burden, the burden shifts to the Commissioner to show that other substantial gainful employment is available in the national economy, which the claimant is capable of performing. *Greenspan*, 38 F.3d at 236; *Kraemer v. Sullivan*, 885 F.2d 206, 208 (5th Cir.1989). When the Commissioner shows that the claimant is capable of engaging in alternative employment, "the ultimate burden of persuasion shifts back to the claimant," *Id.*; *accord Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990).

The Court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) his age, education, and work history," *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995). "The Commissioner, rather than the courts, must resolve conflicts in the evidence." *Id.*

## Analysis

Plaintiff essentially raises three issues for this appeal: 1) whether the ALJ assigned the appropriate weight to the opinions of her treating and examining physicians, 2) whether the ALJ correctly assessed her credibility and 3) whether the ALJ's hypothetical question presented to the vocational expert was flawed because it did not include limitations found by her treating physicians.

### *Issue 1: Weight Assigned to Treating and Examining Physicians' Opinions*

Plaintiff asserts that the ALJ gave no weight and no consideration to the opinions of those physicians who supported her claim of disability, particularly her treating physicians. Pl.'s Brief 2, 10. Specifically, Plaintiff argues that the ALJ erroneously failed to assign controlling weight to the opinions of her treating physicians, namely John W. McFadden, M.D., and Richard

5

Russell, M.D., and failed to accord the proper amount of weight to the opinion of an examining physician, Robert J. Barnett, M.D. Pl.'s Brief pp. 2, 5-17. Plaintiff further argues the ALJ erroneously adopted the opinions of non-treating physicians, namely James F. Bethea, M.D., and Joe Edward Morris, Ph.D., in determining her RFC. Pl.'s Brief pp.13-17.

With respect to Plaintiff's first argument, the Court finds substantial evidence in the record supports the ALJ's determination regarding the amount of weight due to be assigned to the opinions of Plaintiff's physicians. A treating physician's opinion regarding the nature and severity of a patient's condition is normally given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). Nonetheless, "the treating physician's opinions are not conclusive," and his "opinions may be assigned little or no weight when good cause is shown." *Id*. Ultimately, "the ALJ has the sole responsibility for determining a claimant's disability status." *Id.*

*Dr. McFadden*

Plaintiff saw Dr. McFadden on August 9, 2002. (Tr. 196). He noted that a fibromyalgia examination was "highly positive," with 16 of 18 ususal sites reported painful. (Tr. 196). According to Dr. McFadden, the fibromyalgia examination was compatible with at least one painful cervical disc and at least one painful lumbar disc. (Tr. 196). He further noted that Plaintiff may eventually be a candidate for spine surgery. (Tr. 196). Dr. McFadden concluded that Plaintiff was unable to work and was likely to remain so for a period exceeding twelve months. (Tr. 196).

The ALJ assigned limited weight to Dr. McFadden's conclusion of disability because it

was unsupported by objective medical findings.[2] (Tr. 22). Specifically, the ALJ noted that Dr. McFadden's determination that Plaintiff's fibromyalgia findings were compatible with at least one painful cervical disc and one painful lumbar disc was made without the benefit of any radiographic or imaging evidence. (Tr. 22). The ALJ pointed out that a spinal MRI and X-rays demonstrated only negative to mild findings. (Tr. 22, 174, 381, 389). Because the ALJ's findings are supported by the record, he stated sufficient cause for not assigning controlling weight to Dr. McFadden's opinion of disability.

*Dr. Russell*

On January 8, 2004, Dr. Russell completed a Medical Assessment of Ability to Do Work-Related Activities (physical) in which he limited Plaintiff to lifting and carrying no more than ten pounds. (Tr. 261). He also indicated that Plaintiff could stand for only two hours in an eight-hour work day and sit for hours in the same period. (Tr. 261). He found that Plaintiff could occasionally climb, balance, stoop, crouch, kneel, and crawl. (Tr. 261). He stated that Plaintiff had no reaching, handling, feeling, or sensory limitations, but had a limitation in her ability to push or pull. (Tr. 262). Plaintiff's environment restrictions included heights, temperature extremes, and vibration. (Tr. 262). He also indicated that Plaintiff could not stand for long due to back pain. (Tr. 263). Dr. Russell also completed a Medical Source Statement (physical) on January 11, 2004, in which he indicated that Plaintiff could frequently or occasionally lift ten pounds. (Tr. 264). He stated that Plaintiff could stand or walk for up to four hours (for one hour periods) in an eight-hour work day. (Tr. 265). He indicated that Plaintiff could sit for four hours (for two hour periods) in an eight-hour work day. (Tr. 265). He stated

---

[2]The ALJ did not reject Dr. McFadden's determination of fibromyalgia, as he concluded that it qualified as a severe impairment. (Tr. 20).

7

that Plaintiff should never climb or stoop, but could occasionally balance, crouch, kneel, and crawl. (Tr. 265). He stated that Plaintiff was limited in her pushing and pulling capacities, but not in reaching or handling or feeling. (Tr. 266). He listed temperature extremes and vibration as environmental restrictions. (Tr. 266). Dr. Russell indicated that Plaintiff's limitations were of the degree to be expected by her diagnoses, that her diagnoses were confirmed by objective findings, and also that he based his opinion in some degree on Plaintiff's report of subjective complaints. (Tr. 266).

In a letter to Plaintiff's counsel dated May 17, 2005, Dr. Russell stated that he had treated Plaintiff since November 2001 and had regularly treated her since that time. (Tr. 376). He noted that Plaintiff hurt her back at work on February 18, 2002. (Tr. 376). He noted that he also treated Plaintiff for hypertension and arthritis. (Tr. 376). He stated that her hypertension was usually controlled by medication. (Tr. 376). He noted that Plaintiff complained of severe headaches on a few occasions. (Tr. 376). He had also prescribed anti-anxiety medication. (Tr. 377). He said that Depo Medrol injections had helped control shoulder pain. (Tr. 377). He noted that Plaintiff complained of continued pain on May 13, 2005, at which time he prescribed Methedone to be used with Lortab when pain was uncontrolled. (Tr. 377). He stated that Plaintiff had lumbar disc disease with spondylolisthesis and sciatica, probably cervical disc disease with neuropathy and possible tendinitis of her shoulders and arms. (Tr. 377). He concluded that these impairments, along with regular treatment for hypertension and chronic anxiety and depression, rendered Plaintiff disabled. (Tr. 377).

On November 15, 2005, Dr. Russell completed another Medical Assessment of Ability to Do Work-related Activities (physical) in which he indicated that Plaintiff could occasionally lift five pounds. (Tr. 398). Plaintiff's standing and walking were limited to two hours in an eight-

8

hour work day (for one hour at a time). (Tr. 399). Plaintiff's ability to sit was restricted to four hours in an eight-hour work day for periods of one hour at a time. (Tr. 399). He found that Plaintiff could occasionally balance, but should never climb, kneel, crouch, crawl, or stoop. (Tr. 399). Pushing and pulling were limited in the lower extremities. (Tr. 399). Plaintiff was limited in her ability to reach and could only occasionally reach, handle, finger, or feel. (Tr. 400). Plaintiff had numerous environmental limitations. (Tr. 401). He described Plaintiff's pain as "moderately severe." (Tr. 401). He stated that objective findings "somewhat" confirmed his diagnoses of Plaintiff's condition and that he "somewhat" based his opinion about Plaintiff's limitations on her subjective complaints. (Tr. 402). Dr. Russell provided an addendum to his assessment explaining his handwriting. (Tr. 409).

The ALJ attributed only limited weight to Dr. Russell's opinion of disability as well. (Tr. 22-23). The ALJ noted that in support of his repeated assessments of Plaintiff's condition, Dr. Russell cited primarily Plaintiff's subjective reports of pain, which the ALJ found not entirely credible. (Tr. 22-23). Further, the ALJ pointed out that Dr. Russell's own treatment notes were inconsistent with a finding of disabling limitations. (Tr. 22).[3] The ALJ noted that Dr. Russell's conclusions were not supported by any significant objective findings. (Tr. 23). Again, the ALJ pointed to the results of Plaintiff's spinal MRI's which yielded only mild findings. (Tr. 23). Accordingly, the ALJ was justified in not assigning controlling weight to the opinion of Dr. Russell.

---

[3]Indeed, in one instance Dr. Russell states that Plaintiff's blood pressure is usually normal, but he nevertheless concludes that hypertension contributes to her disability. (Tr. 376, 377).

9

*Dr. Barnett*

On May 3, 2004, Dr. Barnett wrote a letter to Plaintiff's counsel in which he stated that X-rays showed some sacralization of the first sacral vertebrae with arthritic changes in the sacroiliac joint and narrowing of the lumbosacral interspace. (Tr. 284). After reviewing his own medical records and records from other doctors, Dr. Barnett indicated that Plaintiff demonstrated a fair range of motion with obvious discomfort. (Tr. 285). Plaintiff could walk on her heels and toes and had good straight leg raising. (Tr. 285). He stated that Plaintiff's degenerative back disease prevented her from doing any "appreciable lifting, bending, stooping, and long standing." (Tr. 285). He also stated that Plaintiff had residuals from carpal tunnel surgery, which prevented her from excessive use of her hands and a right shoulder condition that precluded overhead work. (Tr. 285). He completed a Physical Capacities Evaluation in which he indicated that Plaintiff could only lift 10 pounds (or less) frequently, could walk for two hours in an eight-hour work day, stand for one hour in an eight-hour work day and sit for two hours in an eight hour work day. (Tr. 286). He found that Plaintiff could only bend or reach occasionally. (Tr. 286). He further indicated that Plaintiff's upper extremities were restricted. (Tr. 286).

The ALJ assigned only limited weight to Dr. Barnett's conclusions. (Tr. 23). The ALJ noted that Dr. Barnett had performed only a limited physical examination of Plaintiff and that he relied primarily upon Plaintiff's subjective reports of pain and manipulative limitations. (Tr. 23). The ALJ further pointed out that Dr. Barnett's conclusion of disability was inconsistent with his own notes indicating that Plaintiff retained a "fair" range of motion, performed successful heel and toe walking and displayed negative straight leg raise testing. (Tr. 23). Based on this, the ALJ stated sufficient cause for attributing only limited weight to Dr. Barnett's

opinion.

Now, the Court turns to Plaintiff's argument that the ALJ wrongly adopted the medical opinion of Dr. Bethea with regard to her physical limitations and of Dr. Morris with regard to her mental condition. Pl.'s Brief pp. 13-14.

*Dr. Bethea's Opinion*

On March 28, 2004, Dr. Bethea, a medical expert, submitted interrogatory responses in which he stated that medical evidence established that Plaintiff had back pain, but no neurological deficits. (Tr. 276). He also indicated that the medical evidence did not show that Plaintiff met or equaled any Medical Listing. (Tr. 276). Dr. Bethea also indicated that the medical evidence did not support the level of severity of pain complained of by Plaintiff. (Tr. 278). He completed a Medical Source Statement of Ability to Do Work-Related Activities (physical) in which he stated that Plaintiff could occasionally lift and carry 50 pounds, frequently lift up to 25 pounds, and stand or walk for about six hours in an eight-hour work day. (Tr. 280). He also found that Plaintiff could sit for about six hours in an eight-hour work day. (Tr. 281). Dr. Bethea indicated that Plaintiff could occasionally climb, balance, kneel, crouch, crawl, or stoop. (Tr. 281). He noted no manipulative or visual/communicative limitations. (Tr. 282). Finally, he indicated that Plaintiff should not work around vibration. (Tr. 283).

Dr. Bethea's assessment directly conflicts with the assessment of Dr. Russell. However, the Court finds the ALJ acted within his discretion in adopting the opinion of Dr. Bethea. First of all, the ALJ pointed out that Dr. Bethea's opinion was entitled to special weight because he is a medical expert. Additionally, the ALJ noted that Dr. Bethea had the benefit of a significant amount of radiological and imaging evidence and that his assessment was consistent with the evidence as a whole. (Tr. 23). The Court finds the ALJ's determination is amply supported by

the record. For example, the records of Paul Byers, M.D., add support to Dr. Bethea's conclusion.

Plaintiff was consultatively examined by Dr. Byers on July 23, 2005. (Tr. 383-88). He noted that Plaintiff walked slowly but without difficulty (despite bandages from recent ingrown toenail surgery). (Tr. 384). Plaintiff had problems getting on and off the examination table and in getting in and out of a chair. (Tr. 384). Grip strength was 5/5 bilaterally. (Tr. 384). There was positive Tinel's sign on the right, but no atrophy. (Tr. 384). Arm joints had full ranges of motion. (Tr. 384). Some reduction in left shoulder ranges of motion was noted. (Tr. 384). The neck had full ranges of motion. (Tr. 384). Lumbar spine flexion was 70 degrees. (Tr. 384). There was decreased range of motion in the hips. (Tr. 384). Straight leg raises were negative in the sitting or supine position. (Tr. 384). Plaintiff could walk on her heels, but not on toes, due to recent toe surgery. (Tr. 384). Mentation was normal. (Tr. 384). Dr. Byers noted chronic low back pain with some reduction in range of motion but no motor or sensory changes. (Tr. 384). He also noted decreased ranges of motion in the hips, likely related to back pain. (Tr. 384). Dr. Byers completed a Medical Source Statement (physical) in which he found that Plaintiff could occasionally lift or carry 20 pounds and frequently lift up to ten pounds. (Tr. 386). Standing, walking or sitting were not impaired. (Tr. 387). He found that Plaintiff could occasionally climb, balance, stoop, crouch, kneel, or crawl (but due only to recent ingrown toenail surgery). (Tr. 387). He indicated that Plaintiff's ability to reach was also limited due to reduction in range of motion of the left shoulder. (Tr. 387). He also indicated that Plaintiff should avoid vibration. (Tr. 388).

The ALJ found that Dr. Byers's assessment was restrictive, considering the evidence as a whole and pointed out that Dr. Byers's finding regarding reduction of range of motion in the hips

12

was based upon Plaintiff's subjective complaints. (Tr. 23). Nonetheless, the ALJ found that Dr. Byers' opinion was entitled to some weight to the extent that it showed Plaintiff was not disabled. (Tr. 23).

Lastly, Plaintiff's diagnostic imaging results (Tr. 389) and the findings of Walter Eckman, M.D. (Tr. 299-300) and Steven Easley, M.D. (Tr. 204-06) also support Dr. Bethea's conclusion. Therefore, because there is ample support in the record for Dr. Bethea's opinion, the ALJ committed no error in adopting it.

*Dr. Morris's Opinion*

As regards her mental condition, Plaintiff was consultatively examined by Joe Edward Morris, Ph.D., on August 16, 2005. (Tr. 390-97). He noted that Plaintiff did not appear depressed and smiled often during the examination. (Tr. 390). He also stated that he believed that Plaintiff's statements were possibly not reliable and that he believed Plaintiff to have a somataform disorder, causing her to under-report her abilities. (Tr. 390). Plaintiff's thought processes were coherent and logical. (Tr. 392). Dr. Morris estimated that Plaintiff's intelligence was in the borderline range. (Tr. 392). Diagnoses included somatoform disorder (not otherwise specified) and borderline intellectual functioning. (Tr. 393). He noted that Plaintiff could understand and follow simple instructions and perform simple calculations. (Tr. 393). He indicated that Plaintiff would respond favorably to supervision and interact appropriately with co-workers. (Tr. 393). Plaintiff's concentration and attention did not appear significantly affected. (Tr. 393). He stated that it was his opinion that Plaintiff was not significantly impaired and could perform routine, repetitive work-related tasks. (Tr. 393). Dr. Morris completed a Medical Assessment of Ability to Do Work-Related Activities (mental) in which he indicated that Plaintiff had a fair ability to follow work rules, relate to co-workers, deal with the public,

13

use judgment, interact with supervisors, deal with work stresses, function independently, and maintain attention and concentration. (Tr. 396). He further found that Plaintiff had a poor ability to handle complex instructions, a fair ability to handle detailed job instructions, and a good ability to deal with simple job instructions. (Tr. 396). He indicated that Plaintiff's ability to make personal and social adjustments were good for the most part, with the exception that her ability to demonstrate reliability was fair. (Tr. 397).

Plaintiff claims that records from Region III Mental Health contradict Dr. Morris's assessment. Pl.'s Brief pp. 16-17. The Court does not agree. On October 3, 2003, an intake assessment was completed for Plaintiff at Region III of the Mississippi Department of Mental Health. (Tr. 268). Plaintiff reported taking Zoloft, but had never received mental health treatment. (Tr. 268). She attributed her depression, in part, to health problems. (Tr. 268). Plaintiff reported that she had a low mood, was isolating herself socially, was crying more than ususal and was irritable. (Tr. 268). It was noted that Plaintiff had slowed speech, a flat affect and a depressed mood. (Tr. 268). Nonetheless, her thought content, behavior, memory, judgment/insight and appetite were all appropriate and she was completely oriented. (Tr. 268). Additionally, it was noted that she had average intelligence. (Tr. 268). On November 10, 2003, as part of her treatment, Plaintiff was evaluated by Nicholas A. Cummings, M.D. (Tr. 274). Dr. Cummings noted that Plaintiff was alert and oriented and that there was no suggestion of psychosis. (Tr. 274). His assessment was "relatively mild" depressive disorder (not otherwise specified). (Tr. 274). He prescribed Lexapro and advised Plaintiff to return in two months. (Tr. 274). On January 6, 2004, Plaintiff reported that she never started the Lexapro and that she had lost her prescription. (Tr. 275). Nonetheless, she reported that she had a disability hearing the following month and that she was ready to get back on track. (Tr. 275).

Ultimately, Plaintiff hardly presents a case in light of Dr. Cummings' assessment of only "mild" depressive disorder. Moreover, Dr. Cummings identified no limitations or restrictions associated with Plaintiff's condition. And, to the extent that Dr. Morris's finding of borderline intelligence conflicts with the assessment of average intelligence noted in the Region III records, there is little to be argued considering the fact that Dr. Morris's finding is more restrictive and, thus, favors Plaintiff more. Accordingly, the Court finds the ALJ committed no error in adopting the opinion of Dr. Morris.

*Issue Two: Plaintiff's Credibility*

Plaintiff suggests the evidence does not support the ALJ's finding that her subjective complaints were less than credible. Pl.'s Brief pp. 15-17. The Court disagrees. The ALJ's findings regarding the debilitating effect of subjective complaints are entitled to considerable judicial deference. *James v. Bowen*, 793 F.2d 702 (5th Cir.1986).

In this case, the ALJ's credibility determination is supported by substantial evidence. The ALJ noted that Plaintiff had been counseled by Dr. Donna Harrington to the extent that she had not been truthful in her use of prescription medication and filling a prescription she claimed to have lost. (Tr. 16, 158). In her medical notes, Dr. Harrington stated that she could no longer prescribe medications to Plaintiff. (Tr. 158). Additionally, the ALJ pointed to Dr. Morris's finding that Plaintiff seemed to under report her abilities, possibly due to a somataform disorder. (Tr. 19, 390). Finally, the ALJ indicated that the level of severity of pain reported by Plaintiff was inconsistent with MRI findings that showed some degenerative changes but no herniated nucleus pulposus, no spinal stenosis, and no neural foraminal stenosis. (Tr. 20). An ALJ is in the best position to determine if a claimant's subjective complaints are exaggerated and not credible, especially if the ALJ finds the medical evidence more persuasive than the claimant's

15

own testimony. *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir.1994). Based on this, the Court must defer to the ALJ's credibility finding.

*Issue Three: The ALJ's Hypothetical*

Here, Plaintiff argues that the hypothetical question upon which the ALJ's decision is based was insufficient in that it did not accurately describe Plaintiff's condition as reflected by her treating physicians. Pl.'s Brief pp. 8-11, 19-20. During the second administrative hearing, the ALJ presented three hypotheticals to the vocational expert, Dr. C. Greg Cates. (Tr. 489-492). The first hypothetical required Dr. Cates to consider a person of Plaintiff's age, education and work experience and with limitations as testified to by Plaintiff. (Tr. 489). In response to this hypothetical, Dr. Cates opined that there was no work the hypothetical individual could perform. (Tr. 489). The ALJ's second hypothetical was based on the assessments of Dr. Byers and Dr. Morris. (Tr. 490). In response to this hypothetical, Dr. Cates opined that the individual could perform Plaintiff's past light, unskilled work as a packer. (Tr. 488, 491). The ALJ's third hypothetical was based on the mental limitations found by Dr. Morris and the physical limitations found by Dr. Bethea. (Tr. 492). This time, Dr. Cates opined that the individual could perform all of Plaintiff's past work. (Tr. 492).

When a hypothetical question reasonably incorporates all of the 'disabilities' found by the ALJ and claimant's representative was provided an opportunity to "correct any defect" about additional limitations, the hypothetical question is sufficient. *See Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir.1994). Plaintiff suggests that the ALJ's third hypothetical was flawed because it did not contain all the limitations found by her treating physicians.[4] As discussed thoroughly

---

[4] Indeed, Plaintiff argues that the vocational expert failed to consider her hypertension. Pl.'s Brief p. 11. However, as indicated above, Dr. Russell himself noted that Plaintiff's blood

above, the ALJ's decision to assign limited weight to the opinions of Plaintiff's treating physicians is supported by substantial evidence. Accordingly, because the ALJ's third hypothetical reasonably contained all the limitations found by him, his conclusion that Plaintiff was not disabled is supported by substantial evidence.

## Conclusion

Based on the foregoing, it is the opinion of the Court that the decision of the Commissioner be affirmed and that this appeal be dismissed. A final judgment consistent with this opinion will be entered.

SUBMITTED THIS 28th day of March, 2008.

/s/ MICHAEL P. MILLS<br>
**CHIEF JUDGE**<br>
**UNITED STATES DISTRICT COURT**<br>
**NORTHERN DISTRICT OF MISSISSIPPI**

---

pressure was controlled by medication and was usually normal. (Tr. 376-77).